Irving Kirschenbaum, J.
Motion by plaintiff, "Pension Fund”, for summary judgment against defendant, Chase Manhattan, and cross motion by Chase Manhattan (defendant) for summary judgment against defendant, Totowa S&L, if Chase is liable to plaintiff, and cross motion by defendant, Totowa S &L, for summary judgment dismissing cross claims by Chase are consolidated for disposition.
Pension Fund issued two checks against its account at Chase, each in the sum of $100,000, payable to Totowa S&L for the purpose of purchasing two certificates of deposit from *682 Totowa. Fabio, administrator of the Pension Fund, selected Naiman to deliver the two checks to Totowa and to obtain the two certificates of deposit for the Pension Fund from Totowa.
Naiman delivered the two checks to Chase for certification and Chase certified the two checks. Naiman and companions then proceeded to Totowa S&L with the two certified checks where they met with Rocco, President of Totowa S&L, They told Rocco that they wanted to open a certificate of deposit account for $100,000 in the name of the Pension Fund, and another account for $100,000 in the name of Playmate Enterprise Products, Inc. Rocco wrote receipts for the two certified checks and delivered the receipts to Naiman. He, Rocco, then called a subordinate into his office, with Naiman and companions still present, and explained Naiman’s plan to the subordinate. The subordinate advised Naiman that the Pension Fund’s check payable to Totowa could not be used to open a Playmate account, but that if Naiman and companions brought in a bank check or cashier’s check of Chase, payable to Totowa, a Playmate account could be opened. Without obtaining the return of the receipt he had written and delivered to Naiman, on the following day Rocco returned one of the $100,000 checks to Naiman. Naiman, in turn, proceeded to Chase, and holding himself out as a representative of Totowa requested an officer of Chase to issue a Chase check for $100,000, payable to Totowa in place of the Pension Fund’s check. Chase, in compliance with the request, accepted delivery of the Pension Fund check without Totowa’s indorsement, debited the Pension Fund account $100,000 and issued a $100,000 Chase check to Naiman payable to Totowa, and wrote on Pension Fund’s certified check "not used for purpose intended”. Naiman and companions returned to Totowa with the Chase check. Rocco, President of Totowa, had the same subordinate open a Playmate account for $100,000 and on the same day, Rocco loaned $80,000 to Playmate using the Playmate account as collateral. A short time thereafter, he loaned another $10,000 to Playmate still using the Playmate account as collateral. Eventually, Pension Fund discovered that it paid $200,000 and received only one $100,000 certificate of deposit from Totowa.
Rocco, Naiman and others are presently under indictment as defendants in Federal court, New Jersey, for their alleged involvement in the conspiracy. Fabio (now deceased) is named as a nondefendant conspirator.
*683 Pension Fund seeks to recover $100,000 from Chase. Chase, if it is liable, seeks to recoup $100,000 from Totowa.
Pension Fund claims that the failure of Chase to obtain a Totowa indorsement on the Pension Fund check is negligence for which Chase is liable.
Obviously, if Totowa had accepted the Pension Fund’s $100,-000 certified check and opened a Playmate account therewith, it would have constituted a diversion of funds for which Totowa would be liable to the Pension Fund for conversion.
Chase, by accepting delivery of the $100,000 certified check, payable to Totowa, without Totowa’s indorsement, and issuing its own check in place thereof accomplished the same end result.
The critical importance of Chase’s failure to obtain an indorsement in this case can best be observed by comparing what happened here with the consequences which might have followed if Chase had insisted on a genuine indorsement by Totowa and had made sure that the person actually presenting the check for exchange was a genuine agent of Totowa.
If Totowa had signed the check, and if it had been presented by Totowa’s authorized agent for exchange, then, in Uniform Commercial Code terminology, a proper presentment would have been made, because it would have been a demand for payment "by or on behalf of the holder” (Uniform Commercial Code, § 3-504, subd [1]). The messenger would have been a holder because he would, in effect, be in possession of an instrument "drawn, issued or indorsed to him or to his order or to bearer or in blank.” (Uniform Commercial Code, § 1-201, subd [20].) In addition, the transfer of the check to Chase, with a proper indorsement from Totowa, would have constituted a negotiation under section 3-202 of the Uniform Commercial Code, which provides: "If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery.”
A genuine indorsement would, therefore, have made the presentment proper ánd would have resulted in a negotiation of the check by Totowa to Chase. Under those circumstances, a number of warranties would have arisen by operation of law in favor of Chase and, derivatively, in favor of the Fund, Chase’s depositor.
Thus, under section 3-417 of the Uniform Commercial Code, entitled "Warranties on Presentment and Transfer,” Totowa *684 would have warranted, among other things, that it had good title to the instrument or was authorized to obtain payment or acceptance on behalf of one who has good title. In addition, if Chase had insisted on an indorsement, Totowa’s indorsement would have resulted in a warranty under subdivision (2) of section 3-417 of the Uniform Commercial Code on the part of the indorser, that: "(a) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and (b) all signatures are genuine or authorized; and (c) the instrument has not been materially altered; and (d) no defense of any party is good against him; and (e) he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted instrument.” It is significant that such warranties would include a warranty that "no defense of any party is good against him.”
In addition, by indorsing the check, Totowa would have made the warranties contained in section 3-414 of the Uniform Commercial Code.
Finally, by paying the check in accordance with a genuine indorsement, Chase would have discharged the liability which it might have on the instrument, in accordance with the terms of section 3-603 of the Uniform Commercial Code.
The situation of the parties in the absence of indorsement is considerably different. Thus, while the Pension Fund claims that Totowa is liable for negligence and is perhaps liable under a theory of money had and received, Totowa’s liability is restricted to such theories because it has not made any of the warranties which an indorser makes by operation of law under the Uniform Commercial Code.
Chase’s failure to avail itself of the safeguards and warranties which are specifically provided in the Uniform Commercial Code is the proximate cause of Totowa’s present ability to argue that it never received the proceeds of the Fund’s check. Had Chase obtained a proper indorsemept, Totowa would have no such defense (Uniform Commercial Code, § 3-417, subd [2]), and there would be clear evidence on the instrument itself that Totowa had, in fact, received the proceeds and benefits of the Fund’s check. In the present case, there was no such evidence and the lack of an indorsement, in and of itself, provides prima facie evidence that the proceeds of the check did not reach the intended payee. Chase had failed to present *685 any evidence whatsoever to the contrary and, accordingly, was not entitled to pay the check out of the Fund’s account.
Accordingly, plaintiffs motion for summary judgment against defendant, Chase, in the sum of $100,000 with interest, is granted. Chase’s motion for summary judgment against Totowa and Totowa’s cross motion for summary judgment against Chase present issues of fact for trial, and are both denied.